HOOD, Judge.
This is a tort action arising out of a motor vehicle collision which occurred on June 9, 1960. The suit was instituted on June 9, 1961, by Dorman Doyle and his wife, Mary Janelle Doyle, and by Ezra Doyle, individually and as administrator of the estate of his minor daughter, Linda Sue Doyle. The defendants are John E. Khoury and his public liability and property damage insurer, Central Mutual Insurance Company. Plaintiffs contend that as a result of the accident Mrs. Mary Janelle Doyle and Miss Linda Sue Doyle were injured.
After issue was joined the case was tried by jury, and the trial resulted in a verdict for plaintiffs and against defendants, as follows: For Dorman Doyle $175.00; for Mrs. Mary Janelle Doyle $5,000.00; for Ezra Doyle, as administrator of the estate *767 of his minor daughter, Linda Sue Doyle, $1,500.00; and for Ezra Doyle, individually, $140.00. A judgment in accordance with the verdict was rendered, read and signed, and defendants have appealed from that judgment.
The only issues raised on this appeal relate to quantum. Defendants apparently do not question the awards made to Dorman Doyle and to Ezra Doyle, individually, but they contend that the amounts awarded to Mrs. Mary Janelle Doyle and for the injuries sustained by Linda Sue Doyle are excessive. Plaintiffs contend that the awards are fair and should not be disturbed. Since no question has been raised as to the awards made to Dorman Doyle and to Ezra Doyle, individually, we will review the judgment only insofar as it relates to the awards in favor of Mrs. Doyle and in favor of Ezra Doyle, as administrator for the estate of his minor child.
There were no applications for a new trial, so we do not have the benefit of an expression from the trial judge as to the correctness or the fairness of the awards made by the jury.
Immediately before the accident which gave rise to this suit occurred Mrs. Doyle (whose name also appears in the record as Mrs. Francis L. Doyle) was driving an automobile, owned by the community which existed between her and her husband, in a' westerly direction across the Calcasieu River bridge, in Lake Charles. Her car stalled while on the bridge and shortly thereafter it was struck in the rear by an automobile bein/¿ driven by the defendant, John E. Khoury. The cars apparently collided with some force, because plaintiff’s vehicle sustained considerable damage as a result of the accident.
There were two passengers in the car which Mrs. Doyle was driving. One was her seven-month old baby, and the other was Mrs. Doyle’s sister-in-law, Linda Sue Doyle, who was then 15 years of age. The baby was not injured as a result of the accident, but Mrs. Doyle and Linda Sue Doyle sustained the injuries which are hereinafter-described.
 The evidence shows that at the time this accident occurred Mrs. Doyle was 25 years of age, and she had been pregnant for about two months. No complications-developed during her pregnancy and the baby was born in January, 1961, at the time it was expected. The birth was normal in every way, and plaintiffs concede that the accident produced no ill effects either as to-the pregnancy or as to the child.
Mrs. Doyle did not experience any pain or discomfort immediately after the accident, occurred. Shortly thereafter she, in fact, told the defendant, John E. Khoury, and the State Trooper who investigated the accident that she was not injured. After the investigation had been completed, however, a passing motorist took her to her home in West-lake, Louisiana, in his car, and she testified that on the way to Westlake her back started bothering her. Later that afternoon she and her sister-in-law went to DeQuincy, a distance of about 23 miles, where they were both examined by Dr. David J. Drez. Dr. Drez, a general practitioner, had been. Mrs. Doyle’s family physician for many years and was treating her then during her pregnancy. Mrs. Doyle further testified that her back has bothered her continuously since that time. She says that sometimes it will “just ache,” and at other times it “hurts-pretty bad,” with pain radiating down her right leg. She stated that her neck has; bothered her also, but “it don’t hurt me like my back does,” and that “now it don’t bother me so much as it used to.”
Mrs. Doyle consulted Dr. Drez about once-every three weeks before and after the accident for pre-natal care incidental to her pregnancy, and she visited him on some occasions after the child was born. Dr. Drez testified that in checking his records for the 17-month period which elapsed between the date of the accident and the time case was tried he found that Mrs. Doyle complained of her back on six of those visits,, the last such visit having occurred on Sep *768 tember 21, 1961. During all of that time, however, Dr. Drez was unable to find any muscle spasm or objective signs of injury, and the treatment which he administered consisted of physiotherapy and some drugs. He testified that in his opinion, Mrs. Doyle sustained a strain of the muscles on the right side of her neck and a possible strain of the back. He did not consider her injuries to be of such a nature, however, as to warrant an X-ray examination at any time. All of the treatment administered to Mrs. Doyle by Dr. Drez for complaints relating to her back was carried out in the doctor’s office. His total bill for the six visits during which Mrs. Doyle complained of back pain amounted to $30.00.
Dr. George P. Schneider, an orthopedic surgeon, examined Mrs. Doyle on May 1, 1961, almost 11 months after the accident ■occurred, at the request of Dr. Drez. He made no examination of her neck at that time, because she had only minimal or insignificant complaints as to that part of her body, but he did make a clinical and X-ray •examination of her back. Dr. Schneider, like the two other examining physicians, found no muscle spasm or other objective ■signs of injury, but from Mrs. Doyle’s complaints he concluded that as a result of the accident she had sustained a sprain of the low back area which was complicated by her pregnancy, and he felt that she would fully recover within “several months” after he examined her. He stated, however, that although the backache of which Mrs. Doyle •complains could have been caused by the accident, it also could have been caused by her pregnancy or by a pre-existing lordotic curve of her back, neither of which conditions had any relation at all to the accident.
Dr. C. V. Hatchette, an orthopedic surgeon, made a clinical and X-ray examination of Mrs. Doyle on July 14, 1961, at the request of defendants. He also was unable to find any muscle spasm or objective signs of injury, and he concluded that she had fully recovered from any injury which she map have sustained as a result of the accident which occurred on June 9, 1960.
The evidence convinces us that the injury sustained by Mrs. Doyle was of a relatively minor nature. She was never hospitalized or placed in traction, and it was not necessary at any time for her to wear a neck brace or a back support as a result of the injuries which she sustained. None of the doctors who examined her ever suggested or recommended that she use such a brace or support. She apparently has been disabled or inconvenienced very little, if any, because of these injuries. About the only testimony tending to show a disability is her statement with reference to her housework that, “I might stop if it hurts pretty bad,” and her husband’s testimony that, “It seems like it takes her more time in lifting things and she don’t rush like she used to in doing things. She kind of hesitates before she’ll really do anything real hard, and I try to help her out by lifting things that need to be done.”
We are convinced that Mrs. Doyle has suffered some pain and discomfort from the injuries which she sustained, and that her recovery has been somewhat prolonged, perhaps because of her pregnancy and the subsequent birth of her child. The evidence indicates that she recovered from the injury to her neck in a relatively short time, but that she has continued to suffer some pain and discomfort in the low back area. Even that injury, however, is of a temporary nature and has not been disabling.
The jurisprudence is established to the effect that, although there can be no yardstick applicable to personal injury suits, awards made in similar cases should be considered by the courts, so that within the limits permitted by particular states of facts a degree of uniformity will be maintained, so far as possible and practicable, to the end that awards will not be out of all proportion one with the other. See Broussard v. Lormand, et al., 138 So.2d 677, which we decided on March 8, 1962; and Sievers v. Shreveport Transit Co., La.App. 2 Cir., 137 So.2d 453.
In this case we realize that since a substantial sum was awarded to Mrs. Doyle as *769 damages the jury must have been convinced that her complaints were genuine, and we are inclined to give great weight to this apparent finding of the jury. After considering all of the facts relating to her injuries, and the amounts awarded as damages in other similar cases, however, we are convinced that the award made to Mrs. Doyle in this instance is excessive and should be reduced. See Brown v. Yellow Cab Company of Shreveport, La.App. 2 Cir., 94 So.2d 573 (where an award of $1,000.00 was affirmed); Dyer v. Stephens Buick Co., La.App. 4 Cir., 125 So.2d 185 (award increased from $600.00 to $1,000.00) ; Benoit v. Commercial Casualty Insurance Company, La.App. 1 Cir., 79 So.2d 647 (award of $2,000.00 affirmed); Jacobs v. Landry, La.App.Orls., 82 So.2d 481 ($1,000.00 awarded); Sievers v. Shreveport Transit Co., supra (award of $2,000.00 affirmed); Strain v. Pearce, La. App. 1 Cir., 125 So.2d 64 (award of $500.00 increased to $1,000.00).
In our opinion an award of $2,000.00 to Mrs. Doyle for the injuries sustained by her would be fair and adequate, and accordingly we think the judgment in her favor should be amended by reducing it to that amount.
The evidence shows that Linda Sue Doyle sustained an injury to her neck as a result of the accident. She testified that her neck began bothering her shortly after the accident occurred and it has pained her intermittently since that time. She was examined and treated by Dr. Drez on the day of the accident, the treatment consisting of diathermy. She saw Dr. Drez again about 10 months later, on April 19, 1961, but the evidence does not show whether she was examined or treated by him at that time. She was examined by Dr. Schneider on May 1, 1961, but apparently no treatment was administered on that occasion.
Dr. Drez testified that when he examined Linda Sue on the day of the accident she complained of pain on the right side of her neck. He found no muscle spasm and no objective signs of injury, and concluded from her complaints that she had sustained a strain of the neck muscles as a result of the accident, but that he couldn’t say that he “even considered it a whiplash at that particular time.” She did not return to him for treatment, and he did not see her again until about 10 months later.
Dr. Schneider examined Linda Sue on May 1, 1961, but found no evidence of injury. On the basis of her complaints he concluded that she had sustained “a moderate spraining injury to her neck.” Pie also found that sometime after the accident occurred she had sustained a moderate sprain of the back, which injury was not related to the accident at all. He testified that “under continued treatment the patient would satisfactorily respond and complete recovery could be expected with respect to both injuries.”
With reference to Dr. Schneider’s finding that Linda Sue had a back injury, the evidence shows that some time during the fall of 1960, after the accident which gave rise to this suit occurred, she injured her back while “high jumping” at school. The evidence also shows that shortly after school opened in September, 1960, she played basketball on the school team for at least a week and then had to discontinue that activity because of the back injury she sustained while high jumping. Plaintiffs do not allege or contend that the back injury which Linda Sue sustained was related in any way to the accident which occurred on June 9, 1960. We think it is significant, however, that the neck injury which she did sustain in that accident was not serious enough to prevent her from engaging in such sports as high jumping and basketball within a period of two and one-half or three months later. Also, it seems to us that the “continued treatment” to which Dr. Schneider referred in his testimony must relate to treatment of her back condition, because she had not received any treatment for her neck injury since the day of the accident and thus there was no treatment being administered for that injury which could be continued.
*770 Dr. Hatchette examined Linda Sue on July 14, 1961. He also found no evidence of any injury at all, and he testified that “at the time of the examination she was completely and entirely cleared up so far as I could determine, and there was no evidence of residual disability either of a temporary or permanent nature.”
The evidence convinces us that Linda Sue sustained only a moderate strain of the neck muscles, which caused her some pain and discomfort. The fact that she did not seek or obtain medical treatment for her neck after the day of the accident, and felt well enough to engage in strenuous sports at school shortly thereafter indicates to us that the neck injury was a relatively minor one, and that she suffered pain for only a short period of time.
We think the award made to Linda Sue’s father for the injuries sustained by her is out of proportion to awards made in other similar cases, and that that award also must be reduced. In our opinion an award of $500.00 for the injuries which she sustained is adequate and fair. See Noonan v. London Guarantee and Accident Co., La.App. 2 Cir., 128 So.2d 918 ($750.00 for injuries more serious than those shown here); Gallioto v. Chisholm, La.App. 4 Cir., 126 So.2d 63 (award of $750.00 affirmed for sprain of ligaments of neck and body, with contusions of head, shoulder and chest, and recovery prolonged by arthritis); Cormier v. Southern Farm Bureau Casualty Co., La. App. 1 Cir., 94 So.2d 901 ($350.00 affirmed for moderate low back sprain, where there was complete recovery in 12 days); Johnson v. State Farm Mutual Automobile Ins. Co., La.App. 1 Cir., 136 So.2d 446 ($350.00 affirmed for cervical strain and low back strain, requiring three or four months for recovery); Robertson v. New Amsterdam Casualty Co., La.App. 1. Cir., 130 So.2d 746 ($50.00 and $100.00 affirmed for neck injuries which appear to be somewhat less serious than the one involved here.)
We are aware of the fact that there are numerous cases involving neck injuries where awards are greater than those made in the cases above cited. In each case we have been able to find where there was a greater award, however, the injuries appeared to be of a much more serious nature than the relatively minor injury sustained by Linda Sue Doyle in this case.
For the reasons herein assigned, therefore, the judgment of the district court is amended by reducing the amount awarded to Mrs. Mary Jan elle Doyle from $5,000.00 to the sum of $2,000.00, and by reducing the amount awarded to Ezra Doyle, as administrator of the estate of his minor daughter, Linda Sue Doyle, from $1,500.00 to the sum of $500.00. As thus amended, the judgment is affirmed. All costs of this appeal are assessed to plaintiffs-appellees.
Amended and affirmed.